Ms. Cook, do I understand you also want to reserve only three minutes for rebuttal? That's correct, Judge. Okay. You may proceed. Thank you. May it please the Court, the issue presented here is the proper interpretation of 38 CFR 3.655, the Rule Governing Discontinuances of Veterans' Benefits and its interplay with the Rule Governing Reductions of Rating of Reductions in Compensation for Persons Rated at 100% as those existed in 1984. As the Court is aware, the VA used 3.655, the discontinuous rule to discontinue Mr. Morrison's compensation in 1981 with nine days' notice after he missed an examination. And it did so without making a separate determination as to whether he had adequate cause for missing the exam. And it did so without applying the protections of the reduction rule in 3.343 that apply to and applied to reductions in awards for Now, with respect to your first issue, don't we have a problem in that ultimately a determination was made that even if there was an obligation to assess the basis for his failure to appear, that there was no reasonable excuse for his failure to appear? I think, as I understand your question, Judge, you're asking whether the fact that he may not have had adequate cause for missing the exam after all, and so what's the harm in the misinterpretation? And the fact is that that's irrelevant because the error was that they terminated his benefits without making the prior threshold assessment about adequate cause. That all happened in 1981 and up through the 1984 board decision, and that failure corrupted that entire process. And so the fact that now somebody wants to look back and say, well, he didn't have adequate cause, that's not the standard. How could they have made any determination as to adequate cause when, you know, as far as they knew, he just wasn't responding to any of the mailings, they hadn't heard from him? I mean, you agree that by the time they actually got the letter from him, the determination had been made to cut off his benefits? Yes, the determination had been made with 9 days advance notice over Christmas and New Years. So, yes, that determination had been made, but by January he had submitted a statement to them explaining that he had not gotten the notice, that he was more than willing to report. But by that time, the VA had already put him on the track that said, we're not looking at adequate cause, and they never looked at adequate cause. They just said, you missed the exam, we cut you off, so therefore we are only following this rule and we're not going to apply any of the protections that 3.343 afford you, even though you're 100%, and we're not going to bother with adequate cause. I want to make sure I have the sequence of events here right, because there's some confusion, at least in my mind. You mentioned that he made a statement in January. We start with Appendix 65, the statement that he makes saying that he got the notice to report for examination on July 31st and didn't receive it until August 19th. You know the document I'm talking about? I do. Right. And that document is dated August 24th. Now, does he later make another statement or submit another document to the VA with respect to the termination of his payments, objecting to the termination of his payments after December? No, he does not, Judge. And that was, I'm sorry. Well, my question is, where's the notice of disagreement? Right, because there were a couple of different issues that were going on. One was the discontinuance in December, and then in April, there was the announcement to him of the reduction from 100% to 10%, and then he filed an O.D. Actually, initially, I guess, to zero, and then they bumped it up to 10%, right? They bumped him up, correct. Okay, now, before you go any further, and I don't want to break your chain of thought here, but you had mentioned that he did something in January. Right. What did he do in January? I thought that this document here was dated August. Right, but the lower court, and perhaps the board, but certainly the lower court, decided that that was not submitted, that even though it was dated in August, well, now I'm getting confused on the facts, but they held that it wasn't an adequate appeal of the discontinuance. Well, since he was referring to the July communication, not the December communication, this document had nothing to do with December, right? Correct, but it didn't start the procedural, it didn't start the appeal process, but it's still evidence as to whether he had adequate cause. Okay, but if he didn't appeal the 655 termination, then that's final, right? Not entirely, Judge, because what he did appeal and what the board found he appealed were two things, two other things besides the December discontinuance. He appealed the rating reduction that when the VA in April said, we're knocking you from 100% to zero, and ultimately back up to 10, but when they told him in April, we're cutting, we're reducing your benefits, he appealed that, the board agreed that he perfected an appeal on that, they made that a factual finding, and he appealed the accuracy of the 10% rating, arguing that he was entitled to a higher rating. So he was appealing it from both angles, both it should not have been reduced and it should be higher. But let me go back to Judge Bryson's point. As I understand the red brief, the red brief argues that he wrote this letter in August, but they didn't get it for five months, that they actually received it in January and then treated that as a request to reopen, and you don't really dispute that. I don't, but I don't think that has anything to do with whether – I'm just trying to understand how it took five months for his letter to get there. Well, that's an excellent question. It's simply not clear on the record, Judge, whether he put that date in and then held on to it, didn't submit it until January. I believe, I don't remember offhand, but I believe there may be a VSO stamp on it. He may have turned it in to a veteran service organization, and there are a number of different dates on the back. I think it's page 66 showing that different people handled it, but they're all dated in January and February, and there is no explanation for why – whether he actually tried to submit it in July or August or whether he dated it then or was using a predated form and then turned it in. But that, as I say, none of that affects whether the board – the fact that he did not appeal that December discontinuance per se does not affect the fact that the board was nonetheless in 84 required to review the case under the reduction rule because he did perfect the appeal of the reduction. And the lower court said he didn't appeal that. Well, the error there is with the court's jurisdictional statute because the board decision, the 2009 board decision that the court was reviewing, made a finding of fact that the veteran had perfected an appeal as to the reduction. The 2009 board said he had perfected that appeal, but the board in 84 didn't have to address that issue because the rule did not apply. There are two different issues, aren't there, really? One is the 655 issue, which is whether he should have been terminated because he didn't show up for a medical examination. And your argument there is they didn't make an adequate finding of no adequate cause. The separate issue, it seems to me, is the 343 issue, which is was he properly reduced, which, given his condition, they were entitled to examine him and determine that he was no longer 100 percent and reduce him to some lower number. And that is, it seems to me, what you're referring to when you say he appealed the April determination, not the 655. Yes, that is correct. So if the 655 falls out because he didn't make an adequate NOV at that point, then what we're focused on is the 343, right? Correct. Okay, and then the question, the government's point is, and I'd like you to respond, the question is did he adequately raise the 343 separate from the 655 before the Court of Appeals for Veterans Claims? Yes, absolutely. And the question is, I looked at your brief, which is reproduced, at least part of it in the joint appendix, and it seemed to me I only found one place where you referenced 343, and that is in connection with the 655. You don't make a separate argument, as I understand it, under 343, do you? Well, I think at page 127 of the joint appendix, I say the board misinterpreted the law on finding that the only issue was whether he was entitled to increased evaluation, that they had to look at 343, and that by looking at that, they would. I'm sorry, you're at 127, fourth issue for review? Yes, the joint appendix at 127, the fourth issue for review, was before the Veterans Court. And I note that the board agreed that the veteran perfected an appeal of the reduction and that, therefore, they were required to look at that. And what happened then at the Veterans Court is the Veterans Court said, didn't say I didn't raise it, they said it wasn't perfected. Well, it was perfected, the board said so. And so the court's determination is simply wrong. And in addition, the court, regardless of whether I raised it explicitly, and as I said, I think I did, but regardless of whether I did, the court let stand the judgment of the lower court, let stand the board's determination that 343 never applies, does not apply. And that not only gives this court jurisdiction over the case, but it shows that the court relied on, or let stand, the board's misinterpretation of the law. It's very clear that 3.43 does and should apply in conjunction with 3.655, that 3.343 governs the standard and the burden for veterans, for reducing a rating for a veteran rated at 100%, and 3.655 governs the timing and the circumstances under which they can reduce it. They can apply both. They don't have to choose, and they shouldn't choose, between the two given the purpose of 3.343. But the logical result is if they can't reduce from 100% without making the medical findings, but they can't get someone to show up for the medical exam that's required, then someone could just forever not show up, and then thereby prevent a reduction from ever occurring. I don't think that's correct, Judge. I mean, I understand the concern, but they have rules in terms of abandonment of claims. They can propose, I mean, they can go through the due process procedures of saying, we're not going to just precipitously discontinue your benefits, but we are now announcing a termination of benefits based on your failure to appear for the exam because they do have an obligation. I mean, there are other rules that I don't think either party cited about the veteran's obligation to participate in the development of his claim and in the processing of his claim. And so there are protections that would allow them to do that. The point here is simply that they could not use the 3.655, which at that time allowed the VA to cut this person off with nine days' notice and from a 100% to zero from December 22nd to January 1st without giving him the protections that 3.343 applies. Let me see if I understand the relationship between these two arguments that you're making. So to do that, let me suppose that, let's suppose instead of the facts of this case, the facts were that the veteran had said, I'm not showing up for the medical examination, don't bother me. So it's clearly no adequate cause for his not showing up. So no 6.55 argument of the sort that you're making today. But when they reduce him to zero under 6.55, then he comes back and he says, oh no, no, please don't reduce my payments. And so they say, we'll treat this as a reopening. And they then do the reopening and they come up with 10%. Have they violated 3.43 in your view by doing that, proceeding in that manner? I'm not sure that they have judged because there are, again, there's other rules that I don't have the citations because it wasn't part of the briefing. But I mean, in other words, where I'm going with this, of course, is he was, you say, you keep saying with respect to 3.43, they can't reduce him from 100%. But as of April, he was not at 100%. He was at zero because he had been reduced under 6.85, which takes you back to 6.55. Right, but the problem is that they used the wrong, when they reduced him in April, when they reduced the rating in April, they used the wrong burden. Yeah, but I think the government will say they didn't reduce him in April. They gave him a new rating because he had already been terminated under 6.55. Right, but then from our perspective, then the VA is allowed to say that the veteran suffers the consequences of their using the wrong rule or using the wrong application of the rule. If 3.655 is to be read in conjunction with 3.343, or if 3.343 is to be used instead of 3.655, the VA cannot rely on using the wrong rule to say, well, we used the wrong rule, but here he is. Now we've already discontinued his benefits. And so now, because we've discontinued his benefits, he falls under the discontinuation rule, even though that's the wrong rule. Now he's stuck with the consequences of that. Let me take this a step further. It seems to me, and this is the regulations that applied back in 1981 and 1984, that 3.655 deals with discontinuance, stopping payments to a veteran for failure to show up without an adequate reason to a medical examination, whereas 3.343 applies to the reduction in a rating. And 3.343, to me, says that you cannot reduce a veteran's rating without a medical evaluation and finding that there's a material improvement. And I see that as different from 3.655, which speaks to a discontinuous. It's kind of like a suspension of your payments, but you haven't reduced the rating. And those two, looking at the regulations that way, they seem to me to be pretty consistent. So what happened here in this case is that the payments were discontinued. His rating was not reduced. The payments were discontinued. And his rating was reduced only after he had a medical examination later on into the late 2000s. But actually, Judge, the rating was reduced by virtue of its connection to the discontinuance. Had there not been a discontinuance, then they absolutely had to, there's no question that they had to follow just a pure 3.343 discontinuance rule. But because of the use, the VA's use of 3.655 without the threshold determination of adequate cause, then they reduced the rating pursuant to, without using 3.343. Well, when you're talking about adequate cause under 6.55, the failure to state any reason, wouldn't that be adequate cause? It may be, Judge, but they never made that determination. They never made the assessment of whether he had adequate cause or not. Neither the lower court nor the board. Could it be because they never heard from him? They heard no cause. They heard no arguments, no reasons at all. Right, but they gave him a notice and said, let us know as soon as you can or something, in some reasonable period of time, if you want to submit any evidence on that. And by the middle of January, he had sent them a letter saying, I didn't get the notice. And they did not make an assessment then about whether he got notice or not. And if I could just go back for a minute to your question, Judge. Before you do that now, he had a medical examination in March of 82, and it was after that that his rating was reduced. Correct, but they reduced the rating based only on the exam. They didn't consider the other evidence in the record. They didn't look to see whether there was a material improvement. So they used a stricter burden, and they put the burden on him then. When he appealed that, they put the burden on him to show that he should get a higher rating instead of having the burden be on the VA to show that there was a material improvement. So he received none of the protections of 3.343 simply because the VA misapplied the rule. They should have used 3.343 in addition to or instead of 3.655. And no one, no part of the VA and the lower court have ever assessed whether 3.343, whether he would have benefited from that. One last question. When you're talking about the protections now, this regulation has changed since then, hasn't it? It has. So the protections you're talking about, I don't see that the protections you referred to a while ago existed back in 81-84. Oh, well, the protections I'm talking about are in 3.343 in terms of the standard and the burden, and that rule, as far as I know, has not changed. But if I could take one minute to answer Jennifer, I seem to be way over time. So we'll restore two minutes of your rebuttal, and we'll give the government an extra four minutes. Thank you, Your Honor, and may it please the Court. This appeal concerns assertions of cue in a 1984 board decision affirming the assignment of a 10% rating to Mr. Morrison's disability by the VA in 1982 and 1983. The board in 1984 did not have jurisdiction over the decision by the VA in December 1981 to discontinue Mr. Morrison's benefits for failure to appear for a reexamination. As a result, the board in 1984 could not have erred, much less clearly and unmistakably erred, by failing to review that decision to discontinue benefits. Did the board make a finding to that effect in 1984 that it had no jurisdiction over that termination? The board didn't make a finding to that effect because that question never arose. There was never any suggestion by the appellant or the VA during the appeal process in 1984 that the discontinuance in December of 1981 had anything to do with the issue before the board. When did the issue of the 655 first arise in this case? My understanding is that on... So there was a cue motion made by Mr. Morrison before the board beginning in, I believe, 2005. That dealt with evidentiary issues. After that was resolved by the board in 2007, the case was appealed to the Veterans Court. Mr. Morrison and the VA asked for a remand to deal with the question of whether Section 3.343 should have been applied by the board in 1984. On remand, the board said that no, Section 3.343 should not have been applied because Mr. Morrison's benefits had already been discontinued at that point, which meant that Section 3.655 provided the standard for decision that the board had to use in 1984 and that the board had correctly applied that standard. That decision by the board was then appealed again to the Veterans Court, at which point the VA and Mr. Morrison again asked for a remand to the board to address the question of whether the discontinuance in December of 1981 had been proper and whether the board in 1984 should have reviewed that issue. So the Section 3.655 issue arose in response to the question of whether or not the board in 1984 should have applied Section 3.343 in reviewing the rating of Mr. Morrison's disability. Go ahead, please. That sort of brings us to the question that Judge Raynor was asking before. If there's a difference between whether you can just cut off the payments in their entirety and whether you can change the rating, why wouldn't 3.4.3 come back into play when there was an assessment of what his benefits should be? I mean, yes, they were cut off entirely. Yes, maybe he can't claim that he was entitled to anything between December and March or December and April, but at that point, why wasn't 100% the starting point? Well, there are at least two reasons, Your Honor. First, 38 CFR Section 3.330 specifies the regulations that are to be used to resume a rating after discontinuance for failure to appear for an examination, and that rule specifies one of two regulations should be applied, either Section 3.158, which applies to abandoned claims, and there's no argument that Mr. Morrison's claim was abandoned, or Section 3.655, which applies to the resumption of ratings after the failure to appear. So the regulations themselves indicate that Section 3.655 is the one you apply in that circumstance. There's no reference to Section 3.343. Second, the VA has interpreted Section 3.343 to apply only to ratings that are continuing in effect at the time that a reduction in rating is contemplated. That is the interpretation that was advanced by the VA or explained by the VA in Reisenstein, and the VA's interpretation there was granted hour deference because that was a carefully considered and reasonable construction of the regulation. Mr. Morrison's rating was not continuing in effect at the time that his rating was reduced, first in April and then it was revised later in 1983 to a 10% rating. You're saying his rating was not in effect? It had been suspended. It had been suspended, but the rating, the payments had been discontinued, but the rating was still effective. I suppose it's a matter of semantics, Your Honor, but the VA's interpretation of Section 3.343 is that the rule applies when payments are being made based upon a rating. So if payments based upon a total rating have been suspended, the rule doesn't apply. That aligns with the policy of the rule, which is that if the payments are ongoing and the veteran is dependent on them, there shouldn't be a sudden stop in those without a medical examination first. But in this case, the payments had already been properly, or obviously that's up for debate, but had been discontinued in a final decision, a decision that is now final, by the VA. And so the rating was not serving as the basis for any continuing payments to the veteran. In that case, Section 3.355 applies. And it's worth noting that the purpose for Section 3.343, as explained in Reisenstein, was to respond to a series of legislative technical amendments to the statutes governing veterans' benefits that had the unintended effect of severing benefits to some veterans who had been under a total disability rating. And so the statute that then led to the passage of Section 3.343 was intended to protect against deprivation of a total rating based upon not any medical evidence, but rather a legislative change that was not intended to have a substantive effect on ratings. Section 3.655 doesn't contemplate a change, a reduction of rating, without a medical examination. And in fact, Mr. Morrison in this case received two medical examinations by the VA before the Board's decision in 1984. He received an initial examination in March of 1982. That was the basis for the initial decision rating him at 0% in April of 1982. Well, it's pretty clear that those medical exams were pretty much dead wrong, right? I mean, you look at the 1997 record and exams, and everyone seems to agree that he had an ongoing problem from 1979 forward and that the decision in 1979 of 100%, the decision in 1997 of 100%, tied completely together. And so that for 15 years, he was denied benefits because of procedural groups that he didn't jump through properly. But medically, he had the same problem during that entire period. Isn't that right? Actually, Your Honor, the situation is considerably more complicated than that. And the problem, and this would be a heavily factually dependent determination that could only be made by the Board or the Veterans Court, but the problem that Mr. Morrison may have had was a sort of mismatch between the sort of conditions that the diagnostic schedule in Section, in Part 4 of 38 CFR, contemplates and the symptoms that he displayed. What the Board explained in 1984 and what was repeatedly explained even after that, and in fact, when Mr. Morrison asked for a reopened claim and a new rating in 1996, and that claim eventually led to his renewed 100% rating, he was initially even then given a 0% rating upon examination. And the reason for that is that it appears to be that the diagnostic schedule says, now as it did in the early 80s, that for symptomology, subjective symptomology, that cannot be observed or demonstrated through a diagnostic test in a clinical setting, symptomology associated with a brain disease can only get a rating of 10% disabling unless it's associated with a specific diagnosis of non-psychotic organic brain syndrome. And the problem for Mr. Morrison was that the doctors repeatedly found that his brain didn't show any signs of an organic brain syndrome, meaning it didn't show any physical changes in the tissue. Because of that... But stepping aside these complexities, the 97 decision that found him with the symptoms of grand mal seizure, that related back to the original 100% finding of 87, didn't it? In terms of the symptomology that it was based on, yes, Your Honor. But in terms of the medical diagnosis, the medical diagnosis that resulted in the 100% rating was actually entirely different from the one that was initially the basis of the 100% rating in 1979. The 100% rating assessed in 1997 was based upon the finding that Mr. Morrison's condition, while it couldn't be given really a specific name that fit within the diagnostic schedule, was something analogous to epilepsy, a major seizure disorder. And that was a new diagnosis that had never previously been given to Mr. Morrison. And it is specified in the regulations governing Q in 38 CFR Section 20.1403B1 that a new medical diagnosis is not a basis for finding of Q. The new interpretation of Mr. Morrison's condition in 1997, which may well have been based on advances in medicine that had not occurred in the early 80s, cannot serve as a finding that the Board's decision in 1984 was clearly and unmistakably erroneous. What was the basis for the medical diagnosis that was the basis for his 100% rating in 1979? That was based upon an examination conducted upon his discharge from the Marines. And interestingly, that appears to have been based entirely upon symptomology rather than any findings of organic changes, which was noted by the examiner in making the subsequent rating in 1982 and 1983 rather disapprovingly. But wait, they did find that he had three major concussive episodes while serving, one of which kept him in the hospital for over 30 days. And so you're acting like they had no basis to conclude that there was some kind of organic injury, and yet in 1979 they seemed pretty confident in that conclusion. Correct, Your Honor. I don't mean to suggest that there was never any incident that could have led to brain injury. There certainly were, and the incident that led to Mr. Morrison being hospitalized for 30 days was, in fact, a bottle being broken over his head during a fight. So, of course, there was certainly some basis for thinking there might be something wrong. The problem was that the examiners couldn't correlate those incidents with any continuing evidence of actual physical changes in the brain, which is what an organic brain symptom would require. Again, that may have been a subject of disagreement among medical experts. Some doctors may have thought that those kinds of explicitly evident changes weren't required, while others may have disagreed, but a disagreement in medical opinion is not a basis for cue. Let me get your response, if I could, to a point made by Ms. Cook. The medical examinations that were conducted in 1982 and, I guess, was it later that year, or 83? 83. Had those been medical examinations pursuant to a 655 procedure in which he was asked to come in, and he did come in, and he had that kind of medical examination, would he have been subjected to a different and more lenient standard than he was when he was trying to prove, in effect, in the first instance that he had a compensable disability? Substantively, as a matter of fact, there's no reason to believe that the analysis would have been different. Mr. Morrison points out that the language of Section 3.343 differs from that of Section 3.655, but as a factual matter in Mr. Morrison's case, his condition was evaluated not simply on the basis of those two examinations. The VA also reviewed his records from his hospital treatments in the past continuing years, and what was available of his service records, as well as his employment records, and they found that, I mean, given that the rating went from 100% to 0%, it's necessarily the case that the VA determined either that the initial diagnosis had not been supported, or that Mr. Morrison's condition must have changed materially, which is all that Section 3.343 requires. Section 3.343 says you can reduce the rating, even if it's a 100% rating, so long as you either find that the initial rating was clear error, or that there has been material improvement in the condition of the veteran. And what you seem to be saying is that this, in all likelihood, would have, if analyzed under 3.43, would have fallen under the first of those rather than the second, that he might have been in just as bad a shape, but they made a clear error in the way they rated him because of the restriction of brain conditions to these organic brain syndromes. That may very well have been the case, Your Honor, and, of course, we don't know what the VA would have said specifically if it had addressed that issue, but there's every reason to believe that it would come out exactly the same way. Now, your argument with respect to 6.55 is that he never filed an NOD, right? Exactly, Your Honor, and that's a finding of fact. And what about the argument that the 3.43 was not really teed up for the Veterans Court? Well, as is evident from the pages from Mr. Morrison's appeal brief before the Veterans Court, there is no reference to the argument that, you know, regardless of whether or not the board was required to review the discontinuance, that Section 3.343 should have been applied anyway. There's simply nothing in the brief to raise that issue, and, in fact, the Veterans Court summarized the issues it understood to be before it in its own opinion in the joint appendix at pages 4 and 5. And if you look at those, you'll see that the Veterans Court understood the issue before it to be whether the board in 1984 had been required to review the propriety of the discontinuance, and if so, whether Section 3.655 should have been applied differently, and if Mr. Morrison's interpretation was correct. There's no understanding by the Veterans Court, certainly, that it was called upon to reach an interpretation of Section 3.343, and that's very simply because that question wasn't presented to the court. The board below in 2009 certainly reached that issue, and extensively, but the Veterans Court is not required to reach sui sante issues that were decided by the board if the veteran then abandons that claim or doesn't advance that argument once he reaches the Veterans Court. Why should the veteran have filed a notice of disagreement if the VA opened the case after it had received its letter? The VA understood his letter not as a disagreement with the decision to discontinue, which was the decision that was made in 1981, and of course couldn't have understood it as a disagreement with that decision because it was dated before that and didn't mention the exam scheduled for December 1981. But the VA understood it as an indication for Mr. Morrison that he was willing to appear for reexamination, and Section 3.655 says that once a veteran is willing to do that, that the VA is then to examine him and resume the rating at whatever level is appropriate. So they reopened his claim appropriately so that his condition could be reassessed and his compensation could be awarded at whatever level was appropriate. But once that happened, there was no need for Mr. Morrison to file a notice of disagreement. Well... I mean, the case was reopened. The claim for compensation based on a rating is open, but a disagreement with the decision to discontinue for failure to appear, that was not opened as an appeal or anything else. Did the VA respond to him and say, we're treating this as a request for a new exam, but you should know we're not treating this as a notice of disagreement as to our cutting you off, which means that you won't have the benefit of 343? There's no indication in the record that there was such a communication. There's no way to know exactly what the VA told him because there were several phone calls, but the content is not known. Okay. Your time is up. Thank you, Your Honor. Just very briefly, and I appreciate the additional time, to answer your question, Judge Bryson, from before, the rules do permit discontinuances and termination of benefits based on a veteran's admissions and statements so that, again, I think that in the situation you were describing where a veteran says, I'm not cooperating, I'm not going to show up, that the VA would be permitted to discontinue his benefits based on that, that he's not cooperating with the process. But if that happened, then he would not have the benefit of 343. Correct. He would not be starting over if he wanted to file another. Correct. Correct. And the underlying point that was argued below was that in 1984, the Board was required to look at whether the reduction was proper. They had to look at 3.343 because the veteran disagreed with the reduction in April. The Board made that finding, and the VA has never applied that rule. We're not asking for a new interpretation, a change in the law, or anything like that. We're just saying that the plain language of the rule at the time required them to consider that issue because, as you said, Judge O'Malley, at some point, 3.343 comes into play. Those rules can be read together. The lower court's errors were that they made a jurisdictional mistake in making a contrary finding and they imposed an improper standard for purposes of establishing what the law was. And those, the Secretary has never disputed. The issue is, were those errors harmless? And because 3.343 applies, we say they were not harmless errors. Thank you. Thank you.